So we'll start with the first case, and if you would please state your appearance for the record. Thank you. Good morning. Good morning, Your Honors, and may it please the Court. My name is Paul Bearden. I represent the appellant Mendocino Railway, and with the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Okay. That's aspirational, but hopefully that will occur. Thank you. Thank you. Colorado River is an exceedingly narrow doctrine that prohibits a stay or a dismissal except in exceptional circumstances. And absent these exceptional circumstances, the Supreme Court has made clear, it's admonished, that Federal courts have a, quote, virtually unflagging obligation to exercise the jurisdiction given to them. Here the district court erred in dismissing the Federal action without there being exceptional circumstances. Significantly, most significantly, in our view, it misapplied the threshold requirement that the State and Federal actions be sufficiently parallel. Now, in fairness to the district court, it didn't have the benefit of this Court's recent decision in Ernest Bach v. Steeleman, which issued in August of last year, some three months or so after the district court's dismissal. And that decision clarified the rigorous standard in this circuit for meeting the threshold parallelism requirement. Okay. So my understanding of that is, if you can chip away at that, then that particular factor of the Colorado River is a bar at that point. But you mention, I think, the Coastal Zone Management Act consistency determinations. My question is, does your complaint allege a live controversy under the Coastal Zone Management Act? Because that's what you're trying to — that's what you're hanging your hat on, to say it's inconsistent, right? Correct. And so our position is that our Federal complaint is a comprehensive challenge, comprehensive challenge to the commissions and to the city's regulatory authority over the railroad. And we make that clear, and we think it does include the Coastal Zone Management Act authority. Do you specifically reference that, though? That is not specifically cited in the brief, but we make clear that we're after not just their permitting authority, which concerns the Coastal Act and the LCP, State and local law, but also any other preclearance authority. And we chose those words carefully because we're not just interested in their imposing land-use permitting requirements on the railroad. We're interested in any and all sources of their authority to regulate, from a land-use perspective, the railroad's rail activities in or outside the Coastal Zone, which is why in our prayer for relief — by the way, unlike the Coastal Commission's complaint in State court, our Federal prayer for relief is very broad. It doesn't say we need a declaration concerning their permitting power under the Coastal Act or the LCP. It says broadly we need a declaration concerning their actions that interfere with the railroad's operations. But is the preclearance issue a theoretical concern? I understood the railroad activities in question here didn't involve anything federally funded or federally licensed with an agency. Judge Sanchez, it certainly is and has been in dispute as to whether the Coastal Commission has any authority — act authority over the railroad. That is evidenced in part by — But my question is more specific. The Coastal Zone Management Act contemplates that the Coastal Commission can take part in a review of a federal application for license or something with a different federal agency. And I don't understand any of these activities here to involve interaction with a federal agency. Maybe that's why you didn't mention it in the federal complaint. The federal complaint, when it was filed in August 2022, was at the time, in terms of the factual background for the dispute, was focused on the most immediate issue, which was the Coastal Commission's claims that certain activities on the property, on the railroad property, required a land use permit under the Coastal Act and LCP. So the complaint's factual background description of what has led to this dispute is focused on that immediate urgency. But there's no question, as we indicated in documents that we submitted — But your — but your federal complaint isn't separately alleging other activities, you know, that you're planning to file a license with an agency, with a surface transportation board, and we don't think you should have any — that the Coastal Commission should have any preclearance authority over that process. There aren't any specific activities mentioned, including, for example, the repair of a tunnel that would allow full freight service along the 40-mile line, which is currently in dispute. But generally, we argue that any and all railroad-related development improvements, et cetera, are preempted. But if — assuming the State court addressed the issue of federal preemption, what part of your federal claim would remain? The part that would remain is the Coastal Commission's authority under the Coastal Zone Management Act. So the Coastal Commission — the City filed a complaint concerning its — the public utility status of the railroad. That doesn't concern federal preemption. The City wants a declaration that the railroad is no longer a public utility under California law. If we prevail there, what that means is that we've been declared a public utility, period. On the Commission's complaint, the Commission itself drafted its pleading very narrowly. It asked specifically for a declaration as to its Coastal Act and LCP authority. If we prevail as to the Coastal Commission in State court, what that means simply is that the railroad is not subject to the Commission's Coastal Act authority, but it says nothing about this interplay between ICTA, the Interstate Commerce Commission Termination Act, a federal law, and the Coastal Zone Management Act. Let me — let me ask you this, because the railroad's answer to the City's complaint also mentioned that there was a general preemption from federal law in that — from requiring the railroad to obtain State and local land use permits and other preclearance, which seems to be the same — encompasses the same thing as your federal complaint. So if it is true that the C — is it the CZMA that is contemplated in the federal complaint, why isn't it equally at issue in the State — in the State case that the State court could decide? Judge Sanchez, the reason is straightforward. That defense, that argument that was raised in Demur, and then again as an affirmative defense, that argument goes to the City's request for injunctive relief, which is — it's limitless, basically. It says, Court, please force the railroad to submit to the totality of the City's land use permitting and other authority. In response to that request for injunctive relief, if we ever get that far, which we don't think we will, because we will — we are confident we'll prevail on the public utility, then it will go to the question of, okay, do we need to impose an injunction? And if so, to what extent? And it's to that piece of the complaint that a Federal preemption argument was raised, that if the Court does reach that issue, if the Court does reach the issue of an injunction, it will be cabined by Mendocino Railway's status as a Federal railroad. But in the — when you're talking about parallelism in the context of Colorado River, the Court simply has to identify one outcome, right, that would lead to further litigation. So on that state plan — Well, but Bach is a little — creates some tension with some of our other cases, so where exact parallelism wasn't required. So how do you answer that? I think that — I think what Bach did was try to resolve some tension in certain panel decisions that came before it, and it concluded that requiring this — I think the language comes from a Supreme Court decision, Moses-Cohen, where the Court — the Supreme Court there said it has to be a complete — complete — the State court action has to be a complete resolution of the Federal action. And the Court — the panel in Bach relied on that language and said, okay, if you can identify an outcome in terms of a possible outcome in the State court action that would not resolve fully and completely the allegations in the Federal complaint, then Colorado River doesn't apply. So Ernest Bach was actually trying to be faithful — Well, I think a good lawyer could always speculate about some outcome that wouldn't be included. So speculation, I don't think it goes that far. Well, it's a possible outcome, and our position is that a possible outcome here is that we prevail against the City and the Coastal Commission as to their two complaints in State court. That's not speculative. That's a real possibility that we would prevail on those two complaints. And then the question becomes, what's left? Now, I think these issues about did you cite it specifically in the complaints, that seems to be an issue better disposed of on a motion to dismiss, say, for absence of an actual controversy, but for purposes of Colorado River. We're not on a subject matter jurisdiction claim here. We're on a Colorado River claim. Well, let's say hypothetically that you lose on that, and I'm just saying it hypothetically. We haven't conferenced, and so I don't know what this panel is going to do. But hypothetically, let's say you lose on that. Are you contending that the district court erred in dismissing your case as opposed to staying it? That was not the focus of our opposition. We want a reinstatement, neither a stay or a dismissal. But it is true that it appears that precedents favor a stay over a dismissal under Colorado River because it is so rarely applied and used to defer to a State court proceeding. Let's say hypothetically that the panel also doesn't find persuasive your argument on parallelism and distinguishes Bach. Could you respond to why the railway isn't trying to gain things by filing in federal court because it filed after the State court action and they had gotten an adverse? Because one of the Colorado factors is obviously forum shopping and trying to get a judge that you like better and a court that you like better. So we believe the chronology of events, the chronology of the various filings among the parties lead to only one conclusion, and that is that the railroad was simply exercising its right as a federal litigant to choose a federal forum for a comprehensive resolution of its federal preemption rights. Why do I say this? At the time the Federal complaint was filed in August of 2022, there was only the State court action. The Coastal Commission was not a party to that action. So there was only a public utility State law claim at that time. The demer had been overruled primarily not on Federal preemption grounds. The demer had been overruled on another argument, that the State statute, the public utilities code, did not give the superior court subject matter jurisdiction to decide whether the railroad is a public utility. And our ---- Roberts. But it did deny the demer on preemption grounds, because if it had taken your arguments at face value, there would not have been a case, right? Not exactly so. We made the preemption argument via a motion to strike as to the injunctive relief request. Because as Your Honors know, injunctive relief, a request for injunctive relief is not a cause of action. The trial court agreed with that. And so our attack was to the injunctive relief. And our point was that it's too broad. It runs up against the Federal railroad's Federal preemption rights. And the Court, in its demer ruling, it kind of combined all of its rulings in one document. It said that's a fact-specific inquiry. If we get there, we'll decide that issue, say, on a dispositive motion or at trial. If we're getting down to you don't have too much time, would you like to reserve your time? I would like to reserve the remaining time. Unless either of my colleagues want to ask questions. Thank you. Okay. Thank you, Mr. Baird. Good morning. Good morning. This is not accurate. It says Judge Kronstadt on it. All right. Good morning. Judge Kronstadt was here the last two days, so not today. Understood. Understood. Good morning, Your Honors. I may please the Court. Patrick Tuck, Deputy Attorney General for Appellee Jack Gainsworth. I will be addressing Colorado River and Younger, and then I'll be ceding the remainder of the time to the Counsel for the City of Fort Bragg. To begin, this is a clear case of form shopping by Mendocino Railway. After losing on their demur and multiple adverse rulings in the State Court action, they raced to Federal Court, filed a Federal complaint that alleges multiple allegations that were also found in their defense, in their demur, as well as in their answer in State Court. Well, before you get to Colorado, I'd like you to just say, if hypothetically we find that there's a theoretical or a possibility of remaining Federal litigation after the State proceedings are completed, does Ernest Bach at the case require that we reverse the District Court's grant of the stay? In that hypothetical, yes. Yes, Your Honor. As Bach seems to stand for that proposition, Bach takes it out of the balancing. That is correct, Your Honor. And as you noted, Bach did go to the extreme on that. But it is the most recent decision. Well, since that would be dispositively against you, if that were the case, could you just reconcile how Bach, could you tell me why you've just heard your friend on the other side say why there is a possibility something else would be left? Can you answer that? Yes, Your Honor. So the eighth factor speaks to resolving all issues between the parties. In this case, Federal preemption is before the State Court. I think we all understand that both in the demur, the answer, and in the Commission's complaint intervention. And as far as the CZMA claim, there is no CZMA claim between the parties in either State or Federal court. As you noted, there's never been a mention of CZMA until this appeal, until the appellant's opening brief. And there is no right dispute on CZMA, as we noted. It's just simply very speculative and theoretical. And it would request an advisory opinion from the District Court on potential future CZMA claims. There is no... So your view about Bach is that when it says, if one possible outcome is continued Federal litigation, are you arguing that the possible outcome has to be something a little more real and concrete and not completely the whims of an able counsel? Yes, Your Honor. I mean, that is exactly what we're saying. I mean, the District Court has to understand what the claim may be. It can't be this theoretical potential dispute that is just not ripe and not something that can be adjudicated by a court, which... Well, Bach had kind of A or B. There were alternatives. So this is a little more, I think, what your friend on the other side said, possible. And so you're saying there isn't a possible anything left? Not under the allegations of the current complaint. I mean, again, there is no reference to CZMA. The preclearance language, the vague preclearance language that is referenced, I mean, that comes from other cases discussing preemption. It's not... They didn't... The Railroad didn't put it in their complaint to address a CZMA claim. It's just more... This is one of the categories that have been preempted in the past. In BNSF and Friends of Yale River, they discussed preclearance. So clearly, that's where that language came from and that's the only reason it's in there. And they've been using it since 2022 in the state court action and now in the federal action. And it's just... It's too vague to read a CZMA claim into it. So I'll go to some of the other factors in Colorado River. Again, clear form shopping by the railway. They're trying to avoid adverse rulings. They're trying to get away from the state court action. They've done that multiple times with trying to disqualify the judge, with trying to relate the case and then transfer it to another judge. We discussed this all in our brief, but I just wanted to note that it's clearly form shopping on that side. As to the third factor, the piecemeal litigation, this does have a strong possibility of differing results and duplication of efforts and wasted judicial resources, which we think is a substantial factor as the district court found. Several of our cases have said that there needs to be something more, a special interest or a federal interest, because everything, every piecemeal litigation has that same risk that you just presented. So what makes this case unique? Well, in this case, there are no other issues. It would only be a duplication. It's a federal preemption claim in federal court. The state court has the same federal preemption claim, so the only thing that would happen would be a duplication of litigation and resources. But what's the status of the state court action now? We have a trial date in October, and we've started discovery. So we've exchanged some written discovery. So we are moving forward with that. So that would also go to the fourth factor under Colorado River. It is much further along than the federal court action, obviously, as that's just the complaint and the dismissal at this point. Okay. I'll jump to Younger abstention, unless there are further questions. Yeah, I have a question about that. Can we consider the commission's complaint in our analysis under Younger, even if that complaint was not yet filed at the time the federal complaint was filed? I know you argued that, Younger, but it's not getting a lot of traction with me. I'm just speaking for myself here. Certainly, Your Honor. Well, the Hicks v. Miranda case, the U.S. Supreme Court case, 422 U.S. 332, does say that the filing dates are not dispositive. I mean, it's not dispositive. It seems to be an open question. But even if you're just looking at the city's complaint, we would argue that that's a quasi-criminal complaint that would fall under the Herrera-Huffman and other nuisance cases. And so it's up to you, Your Honor, if you feel that the way to go is to look just at the city's complaint. But we believe you can also consider the complaint intervention of the commission under that same rubric. So, yes. So we do think it would qualify as a quasi-criminal case under Younger. And it was ongoing because the city's complaint was filed well before the federal complaint. And as far as the compelling state interest, we didn't get a chance to address this argument in the Railway's reply. But they are trying to say that if there's threshold federal issues, there can't be a compelling state interest. We disagree. I mean, the multiple cases shown that preserving the coastal zone is an important state interest. And the cases cited by the Railway are tribal law cases. And the concern there was that the state court could not actually bring a prosecution under tribal law against the tribal companies and other Native Americans in their court. So you couldn't have a compelling state interest when they can't bring an actual case. So if the Railway wins on the preemption issue, is this case over? The Railway wins on the preemption issue. In state court, is it over? The federal preemption win is... I'm sorry. I think I need to expand the hypothetical. So we're saying you're reinstating the federal, and then we would win on... Well, if they're saying there's something left in state court, that this isn't going to handle everything. But if they win on the federal preemption issue, is the case over? I would say so, yeah. I mean, if the state court finds that the authority of both the city and the Coastal Commission is preempted under federal law broadly, then yes, I would say they would win there. But we don't believe that that's the case. Well, I know you're not conceding the issue, but it would seem to be, if you say that it's not over, then that would seem inconsistent with the parallelism argument to me. Well, we're just saying that the state court's going to resolve all issues no matter what. At this point, the state court is going to have to address federal preemption because it's affirmatively opposed by the complaint intervention as well as the defenses from the Railway. So if we're talking about that eighth factor, then the state court will resolve all issues regardless. Do you agree with counsel's sequence that the state court would resolve whether it's public utility first and then deal with preemption? Or, I mean, in other words, is there a possibility that the state court could reach the utility question and never reach preemption? I seem almost out of time. I'll answer your question. No, because especially with the complaint intervention now opposed, it raises federal preemption. It asks the court to rule on whether the Coastal Commission is federally preempted as well as state preemption. So if it's found not to be a public utility, then they would move on to federal preemption as to the city's case as well as the commission's case. And if it's found not to be a public utility, that may defeat the city's case, but they would still need to address federal preemption as to the complaint intervention in the state court action. Okay. All right. Your time's expired. Yes, thank you. I'll yield to the state. We'll hear from Ms. McNiven. Ms. McNiven-G. Good morning. Good morning. May it please the court. Krista McNiven-G for the city of Fort Bragg. So I think one of the kind of overarching issues here is with the district court's consideration of the actual kind of facts of what was going on in the case and the complaints that were in front of the state court and the timing of all of the activities that were happening in the litigation case. So, you know, one of the primary factors that the court focused on I think was the foreign shopping issue. Well, on that issue, in support of the foreign shopping argument, you note that the railway sought to have the state court judge removed from the case. Was there a valid basis for that request given a possible conflict of interest in that the judge had pending coastal development permits? Well, it doesn't seem like it was just coming out of the blue. No, although the timing of a lot of these actions were kind of key points in the case. I'm not suggesting that there wasn't a valid basis for any of them. You know, there were obviously presentable arguments, legal arguments that could be made, but when you take them all together and the timing of some of them, it's just pretty coincidental and it seems, you know, clear, I think, to the district court that also by the complaint itself what Mendocino Railway was trying to do. Well, it seems like, though, if the judge had pending coastal development permits, if a lawyer didn't try to get into that, they would, their client would accuse them of not doing the job. Right, that is. But you're putting that into the whole pot of why the railway is playing games. Right, right. And it's a lot of the timing of things and the repeated attempts to be in another court or be in front of another judge. And as I said, not to say that they were necessarily completely frivolous. Well, I mean, lawyers are entitled to have a fair judge that's not conflicted and probably. I mean, ultimately, the finding was that there was not an issue and that was done by an independent judge that was assigned to that issue. So there wasn't at least any, found to be any merit to it, not that it was, you know, not presented. And I don't think we're suggesting that these things are solely done to delay the case or anything like that. It's just. So if we take that out of the pot, do you still have a good claim under the forum shopping factor? Well, the point is that, you know, the case that was originally filed by the city, it does delineate specific events that were code enforcement, building and safety, health and safety, specific attempts that they had made to inspect the property, give, you know, like a red tag to stop activities from going on without permitting. Those are all kinds of enforcement actions. The city brings the action. And, you know, some of the key things in trying to have it related to the other case and moved over to another department, all of that was after this ruling by Judge Brennan in the state court. And most definitely in his order, he refers to preemption. And it is not just the order about the motion to strike. It is also the order for the demur. So the preemption issues were originally set forth by Mendocino Railway in their demur that was first filed, in their answer, even in their answer to the commissions. This same preclearance language was always in there. So they never raised any CZMA issue with the district court. That wasn't raised until now. I think it, you know, sort of is an after the fact trying to save the federal action. I think the federal action, you know, that's what the district court was looking at really, was that the federal action was just a mirror image of the state court action. And they literally filed this knowing that the Coastal Commission was contemplating filing or about to file a request to intervene. So even though the date, you know, repeatedly they tried to assert that their federal action preceded the Coastal Commission's complaint and intervention, which is technically true when you look just at the filing dates, but I think the district court properly did not just look at the filing dates. It looked at what was kind of overall going on in the case, and they tried to remove the state court action. So, you know, it's delayed the case a lot because of all these activities. You know, again, I'm not suggesting that they were necessarily legally improper, but, you know, they file a writ to the, they seek substantive review with the state court, the Court of Appeal, the Supreme Court. When all of that is exhausted, they try to get it related to another case, so it's transferred to a different division of the county court, so it's going to be before a different judge. So all of these things are kind of going on, and I think that that is, you know, I just think it was a strong factor probably for the district court was the forum shopping issue, and the issues, when you look at the Bexar complaint, don't look any different. Again, it's a mirror image of the city's complaint and then the Coastal Commission, and I think the, you know, the fact that the Coastal Commission went into a little bit more of the penalties and exemplary damages and things like that, the core issue, and so I think Younger still applies, is civil enforcement. The city is trying to enforce its building permit and building safety and those kinds of requirements. It did it by a declaratory relief and injunctive relief action as opposed to penalties, but that doesn't make it any less of a civil enforcement. So I really think both of the abstention doctrines apply, and then also there's a problem with the fact that they have, you know, brought a declaratory relief claim, which is just their defense of preemption, trying to assert it as a federal claim. All right, unless there are questions of the panel, your time's expired. Yes, thank you for your argument. I'll try to quickly go over a few points. As to the question of whether there's an actual controversy concerning the Coastal Zone Management Act, I would encourage the court to look at the exhibits that we've submitted with our request for judicial notice, which puts the lie to the idea that this is some speculative new thing. In those documents, exhibits... No, but you didn't ask for that in your complaint, so how are we supposed to take that? You've asked for some broad relief in your complaint. Yes, comprehensive relief. But what is the live controversy? The live controversy is that the commission and the city are trying to impose pre-clearance requirements on the railroad for their railroad activity. And where is that in your complaint? It's in our prayer for relief. It's throughout. Prayer for relief, you just say. We're asking for broad relief. My only question is, I mean, it's difficult for me to see how pre-clearance is obviously at issue raised in your complaint. Other than the fact that we state clearly it's permitting and other pre-clearance activity. I know, other. Right. And the city and the commission have never explained what other kind of pre-clearance authority does the commission have. According to them in their State complaint, as narrowly pled, they only have Coastal Act and LCP authority, presumably, but that's not the case. The commission agrees that it has Coastal Zone Management Act authority. And in fact, in 2000, as early as 2019, the commission said even if we don't have Federal, even if our permitting authority is Federally preempted, quote, the ICTA does not preempt the commission's jurisdiction pursuant to the Coastal Zone Management Act. That's Exhibit 2 of our request. So there is a live controversy. Our complaint is very broadly pleaded, and we think that it can fairly encompass all authority, all sources of power by the Coastal Commission and the city. And I see that I'm running out of time. So because Colorado River does require exceptional circumstances, and we don't think these actions are parallel, the Court needn't even balance the remaining factors, and the Court should reverse and reinstate the action. Thank you. All right. Thank you for the argument to this Court. This matter will stand submitted.
judges: THOMAS, CALLAHAN, SANCHEZ